UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:19-CV-00017-GNS

C.H., a minor, by and through his Next Friend,
Natural Guardian, and Parent, AMANDA SHIELDS                    PLAINTIFF

v.

UNITED STATES OF AMERICA                                          DEFENDANT

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant's Motion to Dismiss (DN 10), and Plaintiff's Motion for Leave to Serve Discovery (DN 12). The motions are ripe for adjudication. For the reasons that follow, Defendant's motion is **GRANTED** and Plaintiff's motion is **DENIED**.

### I.     BACKGROUND

C.H. is the child of Plaintiff Amanda Shields ("Plaintiff"), who has brought this lawsuit on behalf of C.H. claiming that several medical professionals negligently provided services during C.H.'s birth at the Fairview Community Health Center ("Fairview") in Bowling Green, Kentucky. (Compl. ¶¶ 6, 15, 23-25, DN 1). Allegedly as a result of the complications, C.H. suffers from cerebral palsy, epilepsy, development delay, and cognitive impairment. (Compl. ¶¶ 23-25).

In the Complaint, Plaintiff asserts that three specific medical professionals gave Shields and him improper care: Heather Finney ("Finney"), a certified nurse midwife; Leigh Lindsey ("Lindsey"), a certified nurse midwife; and Dr. Devin Trevor ("Dr. Trevor"), an obstetrician gynecologist who was listed as Shields's attending physician. (Compl. ¶ 19). Plaintiff contends that these individuals were "employee[s] and/or agent[s] of Fairview Community Health Center." (Compl. ¶¶ 20-22). Plaintiff also asserts that Fairview is a health center program grantee under 42 U.S.C. § 254b and a Federal Tort Claims Act "deemed" Public Health Service employee under 42

1

U.S.C. § 233(g-n). (Compl. ¶ 9). Because of Fairview's status as a federal governmental entity, Plaintiff claims the Federal Tort Claims Act ("FTCA") applies here to afford a monetary recovery from Defendant United States of America ("Defendant"), something that would otherwise be barred by the principle of sovereign immunity.

Defendant has moved to dismiss the claim alleging that this Court lacks subject matter jurisdiction because Defendant has not waived its sovereign immunity. (Def.'s Mot. Dismiss 5-9, DN 10). Plaintiff has moved for leave to conduct additional discovery prior to ruling on Defendant's dispositive motion. (Pl.'s Mot. Leave Conduct Disc. 1-5, DN 12).

## II. DISCUSSION

"The FTCA provides 'a limited waiver of sovereign immunity, making the Federal Government liable to the same extent as a private party for certain torts of federal *employees* acting within the scope of their employment.'" *Zion v. United States*, 913 F. Supp. 2d 379, 383 (W.D. Ky. 2012) (emphasis added) (quoting *United States v. Orleans*, 425 U.S. 807, 813 (1976)). The dispute between the parties at this stage of the case rests on whether Finney, Lindsey, and Dr. Trevor constitute federal "employees" for purposes of the application of the FTCA to make the United States liable for their actions. "This is a question of subject matter jurisdiction. Federal law governs this issue. Under federal law, the burden to establish jurisdiction rests on the Plaintiff." *Id*. at 383 (citations omitted).

As the Sixth Circuit has stated:

> A Rule 12(b)(1) motion [for lack of subject matter jurisdiction] can either attack the claim of jurisdiction on its face, in which case all allegations of the plaintiff must be considered as true, or it can attack the factual basis for jurisdiction, in which case the trial court must weigh the evidence and the plaintiff bears the burden of proving that jurisdiction exists.

*DLX, Inc. v. Kentucky*, 381 F.3d 511, 516 (6th Cir. 2004) (citing *RMI Titanium Co. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1133-35 (6th Cir. 1996); *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994); *Ohio Nat'l Life Ins. Co. v. United States*, 992 F.2d 320, 325 (6th Cir. 1990)). The United States makes a factual attack here, so Plaintiff "is not entitled to any presumptive truthfulness as to her factual allegations. Rather, 'this Court may weigh the evidence and resolve any factual disputes when adjudicating such a jurisdictional challenge.'" *Zion*, 913 F. Supp. 2d at 383 (citations omitted).

In analyzing this issue, the Southern District of Florida's decision in *Del Valle v. Sanchez*, 170 F. Supp. 2d 1254 (S.D. Fla. 2001), is instructive because the facts there closely mirror the case.[1] In *Sanchez*, the plaintiffs brought suit against three medical professionals for negligence in the prenatal and delivery care related to the birth of the plaintiffs' child. *Id*. at 1259. Liability on the part of the United States was sought pursuant to the FTCA and the Federally Supported Health Centers Assistance Act ("FSHCAA"), 42 U.S.C. § 233. That court identified the issue before it as follows:

> The exclusive remedy for claims against the United States for the tortious or negligent conduct of its employees is under the FTCA. Suits under the FTCA are limited to those that involve claims arising from "the negligent or wrongful act or omission of any employee of the Government . . . acting within the scope of his office or employment." The FSHCAA, 42 U.S.C. § 233(g), provides an exclusive remedy under the FTCA, 28 U.S.C. § 1346(b), for medical malpractice of employees or contractors of the Public Health Service. The FTCA specifically excludes "any contractor with the United States" from its coverage, but the FSHCAA expands the definition of employee under the FTCA to include contractors, subject to certain qualifications. Thus, prior to the enactment of the FSHCAA, the United States was not liable under the FTCA for the acts or omissions of contractors. The issue presented, therefore, is whether [the medical professionals] qualify under the statutory language of the FTCA and FSHCAA as employees or contractors of the Public Health Service.

---

[1] Although *Sanchez* was a summary judgment case and the case before this Court is a motion to dismiss case, that difference in procedural posture is irrelevant for purposes of *Sanchez*'s articulation of the rules of law governing application of the FTCA.

*Sanchez*, 170 F. Supp. 2d at 1263-64 (citations omitted). The court then further expounded on the application of the FTCA:

> The FTCA was not intended to apply to all persons or groups that are in any way associated or receive funding from the federal government. As stated above, the FTCA applies to *employees* of the federal government. An "'[e]mployee of the government' includes officers or employees of any federal agency, members of the military or naval forces of the United States, . . . and persons acting on behalf of a federal agency in an official capacity, temporarily or permanently in the service of the United States."
>
> The standard for determining whether a party is an employee of the federal government or an independent contractor was established in *United States v. Orleans*, 425 U.S. 807 (1976). In that case, the court held that the determining factor was the level of control exercised by the federal government over the individual or agency. The government's ability to compel compliance with standards, rules, and regulations was not important. Rather, in order to be considered a federal employee, the government had to have some level of control or supervision over the person's physical conduct and his or her day-to-day functions.
>
> . . . "[T]he contract and the terms in fixing the relationship of the offending party are critical[.]"
>
> . . . Aside from the contract itself, courts have examined other factors to determine the degree of control exercised by the government. These factors include: (1) the payment of salary and insurance premiums; (2) the payment of taxes; (3) the intent of the parties; and (4) whether the government controlled the manner and method in which the doctor conducted his or her activities.
>
> . . .
>
> Other courts have had occasion to apply the principles of *Orleans* to private physicians working under contractual relationships with medical facilities operated by or receiving funds from the United States. All of the circuits consistently have held that physicians in private practice or associated with an organization under contract to provide medical services to facilities operated by the federal government are independent contractors, not employees of the government for FTCA purposes. It is noteworthy that, in the few instances when courts have found the physicians to be employees rather than contractors, the United States was the party arguing that the physician was an employee under the FTCA.

*Sanchez*, 170 F. Supp. 2d at 1264-68 (emphasis in original) (citations omitted). The Court applied these rules, finding that the three medical professionals did not constitute "employees" for purposes of the FTCA and concluding that the United States could not be held liable for the acts of the medical professionals.[2]

On the same issue of whether certain individuals constitute employees or contractors for FTCA purposes, this Court in *Zion* conducted a more cursory analysis, only focusing on the language of the contract, in coming to the same conclusion as the Court in *Sanchez* on the United States's motion to dismiss. *Zion*, 913 F. Supp. 2d at 382-84.

As in *Sanchez* and in *Zion*, the analysis here starts with the pertinent contract which evidences no right of the necessary control over Finney, Lindsey, and Dr. Trevor by Fairview so as to afford application of the FTCA. (Def.'s Mot. Dismiss Ex. A, at 2-9). Like *Sanchez*, the contract here is between Fairview—i.e., the public health entity—and Finney, Lindsey, and Dr. Trevor's actual *employer*, "Commonwealth Health Corporation d/b/a Women's Health Specialists ("WHS")[,]" a physician group practice specializing in obstetrics and gynecology, not between Fairview and the individual medical professionals. (Def.'s Mot. Dismiss Ex. A, at 3). Just like the contract in *Sanchez*, the contract here "makes no reference to the individual [medical professionals.]" *Sanchez*, 170 F. Supp. 2d at 1265. Also like *Sanchez*, "[n]owhere does the

---

[2] The Court then discussed the application of the FHSCAA to the case, but that discussion is irrelevant for purposes of the present case. C.H. has not brought suit under the FHSCAA, presumably because he understands that would not be possible. As explained in *Sanchez*, only if a contract exists directly between the medical professionals and the qualified entity, not between the business entity employing the medical professionals and the qualified entity, may suit be brought under the FSHCAA. *Sanchez*, 170 F. Supp. 2d at 1269-70 (FSHCAA "does not apply in this case because there is no direct contractual relationship between the eligible entity and the physician." (quoting *Dedrick v. Youngblood*, 200 F.3d 744, 746-47 (11th Cir. 2001))). Here, no contract exists between Finney, Lindsey, and Dr. Trevor and Fairview; rather, the contract is between their employer and Fairview. (Def.'s Mot. Dismiss Ex. A, at 2-9, DN 10-1).

agreement state that the professional association or the doctors will be subject to the [eligible entity's] control or supervision." *Id*. In fact, as in *Sanchez*, "the opposite appears to be true[,]" meaning there is no indication that Fairview exerts any control over Finney, Lindsey, and Dr. Trevor. The contract here "outlines [the medical professionals'] major responsibilities [but] does not prescribe how [the medical professionals] must perform those responsibilities." (Def.'s Mot. Dismiss Ex. A); *see Zion*, 913 F. Supp. 2d at 384 (citing *Cowden v. U.S. Dep't of Labor*, No. Civ. A. 04-CV-53-JMH, 2005 WL 1691036, at *1 (E.D. Ky. July 18, 2005) (holding that because the alleged employee entity hired and retained its own staff, maintained responsibility for the administration and operation of the government building, and the government only dictated that the entity abide by broad guidelines, the entity was an independent contractor). Also the contract here "does not provide a procedural guideline or a detailed manual for the work." *Zion*, 913 F. Supp. 2d at 384.

Moreover, the medical professionals in the present case "did not receive any of the benefits provided to employees of the [eligible entity]": There is no indication that the medical professionals here "receive sick leave, vacation pay, health insurance, life insurance, or private medical malpractice insurance from the [eligible entity]." *Sanchez*, 170 F. Supp. 2d at 1265. Also like in *Sanchez*, WHS—not Finney, Lindsey, or Dr. Trevor—directly receives compensation from Fairview. (Def.'s Mot. Dismiss Ex. A, at 4); *see Sanchez*, 170 F. Supp. 2d at 1265.

At the end of the day, the evidence before the Court indicates that no one affiliated with the public health entity, Fairview, "supervised the individual [medical professionals] on a day-to-day basis." *Sanchez*, 170 F. Supp. 2d at 1266 (citing *Linkous v. United States*, 142 F.3d 271, 276 (5th Cir. 1998)). In other words, the record establishes that "the government ha[s] [no] . . . level

6

of control or supervision over [Finney, Lindsey, and Dr. Trevor]'s physical conduct and his or her day-to-day functions." *Id*. at 1264-65 (citations omitted).

Plaintiff attempts to avoid this conclusion by asking for leave to take discovery for information that would support the claims asserted—i.e., to show control by Fairview over Finney, Lindsey, and Dr. Trevor. It must be recognized, however, that:

> The party opposing dismissal and requesting discovery has the burden of demonstrating the need for it. The party is "'not entitled to jurisdictional discovery if the record shows that the requested discovery is not likely to produce the facts needed to withstand a Rule 12(b)(1) motion.'" "Moreover, the burden is greater where . . . 'the party seeking discovery is attempting to disprove the applicability of an immunity-derived bar to suit because immunity is intended to shield the defendant from the burdens of defending the suit, including the burdens of discovery.'"

*Skidmore v. Access Grp., Inc.*, 149 F. Supp. 3d 807, 810 (E.D. Mich. 2015) (citations omitted). "'[W]here the facts are relatively simple, [and] substantially uncontroverted, and the law is not complex,' . . . a district court [is] justified in ruling on a motion under Fed. R. Civ. P. 12(b)(1) without pausing to make findings on disputed questions of fact." *Commodities Exp. Co. v. U.S. Customs Serv.*, 888 F.2d 431, 436-37 (6th Cir. 1989) (quoting *Cook v. Providence Hosp.*, 820 F.2d 176, 178 (6th Cir. 1987)).

Plaintiff has not met her burden of showing that the requested discovery is likely to produce facts necessary to withstand the United States's motion. In both the requests for production and requests for admission, Plaintiff essentially asks for contracts, correspondence, and admissions purporting to evidence Fairview's control over Finney, Lindsey, and Dr. Trevor. (Pl.'s Req. Produc., DN 12-1; Pl.'s Req. Admis., DN 12-2). Yet, the record contains the contract between WHS and Fairview coupled with the affidavit of the Executive Director/CEO of Fairview, Chris Keyser ("Keyser"), declaring that no other relevant contract exists. (Keyser Aff. ¶ 2, DN 14-1). In the affidavit, Keyser also states that "[Fairview] did not and does not . . . control the day-to-day

7

obstetric or gynecological medical care rendered by WHS, whether at [Fairview] or at another facility." (Keyser Aff. ¶ 3). The United States has refuted Plaintiff's contention that Fairview exerted control over these individuals so as to afford application of the FTCA and allow Plaintiff to seek monetary recovery from the United States.

More importantly, the Court can discern no possible information that Plaintiff could obtain to warrant departure from "[a]ll of the circuits [whom] consistently have held that physicians[3] in private practice or associated with an organization under contract to provide medical services to facilities operated by the federal government are independent contractors, not employees of the government for FTCA purposes." *Sanchez*, 170 F. Supp. 2d at 1267 (citing *Duplan v. Harper*, 188 F.3d 1195, 1200-01 (10th Cir. 1999); *Robb v. United States*, 80 F.3d 884, 890 (4th Cir. 1996); *Carrillo v. United States*, 5 F.3d 1302, 1304-1306 (9th Cir. 1993); *Broussard v. United States*, 989 F.2d 171, 174-76 (5th Cir. 1993); *Leone v. United States*, 910 F.2d 46, 48-51 (2d Cir. 1990); *Lilly v. Fieldstone*, 876 F.2d 857, 859-60 (10th Cir. 1989); *Lurch v. United States*, 719 F.2d 333, 336-38 (10th Cir. 1983); *Bernie v. United States*, 712 F.2d 1271, 1273 (8th Cir. 1983)); *see also Bryant v. United States*, No. CIV 98-1495-PCT-RCB, 2000 WL 33201357, at *3 (D. Ariz. 2000) ("Several courts have considered the independent contractor exception in relation to physicians who have contracted with the United States to provide services[,] . . . unanimously h[olding] that such contract physicians are independent contractors and not employees of the government." (citations omitted)). Simply put, Finney, Lindsey, and Dr. Trevor were employees of a private organization, WHS, under contract to provide medical services for Fairview, as evidenced by the contract

---

[3] Although Finney and Lindsey are certified nurse midwives and not physicians, there is no reason to treat them differently from Dr. Trevor in light of Keyser's statement that Fairview exerts no control over any of WHS's employees or activities related to obstetrical and gynecological care. (Keyser Aff. ¶¶ 3-4).

between WHS and Fairview. Based on the unanimous agreement among courts, this assuredly characterizes them as contractors for FTCA purposes, and there is no reasonable likelihood that discovery would yield information to change that fact. *See Zion*, 913 F. Supp. 2d at 386, 384 (declining further discovery at dismissal stage and concluding that tortfeasor was an independent contractor "based upon the contractual language alone"); *see also Lumpkins v. United States*, 187 F. Supp. 2d 535, 540 (D. Md. 2002) (rejecting plaintiff's request for further discovery regarding independent contractor determination upon the United States's motion to dismiss because that finding was "controlled by the terms of the contract" and unnecessary).

Finally, the Court notes that Plaintiff's claims against the United States are dismissed with prejudice. As the Sixth Circuit has explained: "Where a statutory right is being pursued, . . . and the defense raised is that the plaintiff or defendant does not come within the purview of the statute, the judicial acceptance of this defense, however it is accomplished, is the death knell of the litigation and has the same effect as a dismissal on the merits." *Rogers v. Stratton Indus., Inc.*, 798 F.2d 913, 917 (6th Cir. 1986). Plaintiff is unable to maintain an action against the United States because the FTCA precludes a plaintiff from bringing an action against the United States based on injuries inflicted by individuals considered to be independent contractors and not employees of the United States. In other words, the United States "does not come within the purview of the statute" here because it cannot be sued unless it possesses an employer-employee relationship with the individuals alleged to have inflicted injury upon Plaintiff. As such, Plaintiff's claims against the United States are dismissed with prejudice. *See Zion*, 913 F. Supp. 2d at 389 (dismissing with prejudice purported FTCA claim against United States after finding tortfeasor to be an independent contractor); *see also Norton v. Murphy*, 513 F. Supp. 944, 947 (D. Colo. 1981) (same).

### III. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** as follows:

1. Defendant's Motion to Dismiss (DN 10) is **GRANTED**, and Plaintiff's claims are **DISMISSED WITH PREJUDICE**. The Clerk shall strike this matter from the active docket.

2. Plaintiff's Motion for Leave to Serve Discovery (DN 12) is **DENIED**.

Greg N. Stivers, Chief Judge
United States District Court

October 15, 2019

cc: counsel of record